In the Matter of NATHAN H. REICH, an Attorney, Respondent.

First Department, May 15, 1936.

*S. C. Lewis* of counsel [*Einar Chrystie*, attorney], for the petitioner.

*Benjamin Gold*, for the respondent.

MARTIN, P. J.   The respondent was charged with the conversion of $600 paid to him by a client for remittance to a third party.   He admitted the conversion but submitted certain facts in mitigation of his offense.   The matter was referred to an official referee to take proof of the charges of professional misconduct and report to this court.

The referee in his opinion states that between May 25, 1933, and September 1, 1933, the respondent received from one Max Bernstein, the complainant, for remittance to the Bond and Mortgage Guarantee Company, four installments on a certain mortgage, each in the sum of $150.   The respondent converted this money to his own use.   Thereafter the complainant, by independent investigation, learned of the conversion of the money and communicated with the respondent who admitted the facts and promised in writing to make payment in full " not later than Monday, October 2, 1933, at 10 A. M."   This promise was not fulfilled.   The complainant then obtained a summons in the Magistrates' Court charging the respondent with unlawfully withholding property.   This was served on October 11, 1933.   The case was adjourned several times.   Thereafter and on or about December 4, 1933, the respondent repaid Bernstein $300.   Some time later he repaid a further sum of $75.   When no other repayments were made, the complainant pressed the matter and the respondent was indicted on June 19,

1934, charged with grand larceny. The case was placed on the trial calendar in the Court of General Sessions, New York County. The indictment has not been dismissed. The respondent says that this is merely a technicality; that he did not wish to move to dismiss the indictment while this proceeding was pending.

The balance of the six hundred dollars was later paid by the respondent who also gave the complainant twenty-five dollars on account of his expenses incurred due to the wrongful acts of respondent. A promise was made by the respondent to pay a further sum of seventy-five dollars on account of the complainant's expenses and to return the seventy dollars paid respondent on account of his fee for services to be rendered the complainant.

There is no dispute about the facts in this case. They are conceded. The respondent admitted all the charges when called before the petitioner's grievance committee and also when he testified before the referee.

In mitigation of his offense the respondent set forth an account of his financial difficulties which he claims grew out of the failure of the Bank of United States in December, 1930 (two.and one-half years prior to his first conversion of $150 in May, 1933). The respondent testified that in 1930 he acted as attorney for his brother-in-law, Max Hochman, who was about to associate himself with others in a corporation. This deal involved the payment of $2,000. Mr. Hochman had raised that sum by borrowing it in small amounts from various relatives. He had a number of checks totaling $2,000 and felt it would be rather embarrassing to make payment in that form. He requested the respondent to take the numerous checks, deposit them in the latter's account in the Bank of United States and give him (Mr. Hochman) the respondent's check for $2,000. This was on the Friday before the bank was closed by the Superintendent of Banks.

As an accommodation to his brother-in-law, the respondent did as requested, depositing the checks on Saturday and giving his $2,000 check on Monday. This was done because the respondent's balance was too small to draw a $2,000 check and it was necessary to first deposit the checks of his brother-in-law. When it became apparent on Wednesday that the Bank of United States was in difficulties the respondent made several inquiries of officials at the branch where he maintained his account and was informed that the $2,000 check had been paid. On the following day, Thursday, the Superintendent closed the bank and the respondent learned that the check had been returned because it had been drawn against uncollected deposits and one of Mr. Hochman's small checks had not been collected.

The closing of the bank tied up all Mr. Hochman's funds. In order to help him consummate his pending deal, the respondent, in December, 1930, borrowed, through the Clearing House, fifty per cent of the credit balance in his account ($1,010). He then obtained loans from friends and relatives to the amount of $1,000 and turned the full sum over to Mr. Hochman.

Since that time the financial affairs of the respondent have become more straightened. He has had to borrow from Peter to pay Paul. With the business depression his income from his practice steadily diminished and his affairs were in such poor condition that when he came into possession of the money given him by Mr. Bernstein to turn over to the mortgage company, he submitted to temptation and used it. He claims, however, that it was never his intention to keep the money but that he intended to return it when he came into funds.

In his report the referee states: " I am satisfied from close observation of the respondent and from the testimony given before me by the complainant and the letters and affidavits submitted that this is the first false step taken by the respondent. He did wrong, but he is fully conscious of the wrong and determined that he will never again make such a mistake."

In its brief the petitioner states: " It should be said to the credit of the respondent that once the misappropriation of the money was discovered and brought home to him, he admitted the truth to Bernstein.

" The respondent has not resorted to fictitious claims in order to defeat this charge as is so often the case in proceedings of this character. In meeting the charge he has been apparently truthful and has relied solely on his unfortunate financial situation. In addition to making full restitution, he has returned to the complainant witness part of the money which he received as a fee and has promised to return the balance."

As this court has so frequently had occasion to state, no circumstances can excuse the conversion of the money of a client. There may be mitigation, but not excuse.

The respondent should be suspended for six months with leave to apply for reinstatement at the expiration of said period upon proof of his compliance with the conditions incorporated in the order.

McAvoy, O'Malley, Untermyer and Cohn, JJ., concur.

Respondent suspended for six months.